# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2098 | **DATE** | 12/5/2000 |
| **CASE TITLE** | Aura Lamp & Lighting, Inc. vs. International Trading Corporation d/b/a Lucent Lighting, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 12/21/00 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss or transfer case [4] is denied. The court notes that Aura apparently disregarded the court's order dated April 21, 2000, instructing Aura to file an amended complaint on or before May 19, 2000 in order to allege diversity adequately. If an amended complaint is not filed within fourteen days of the date of this ruling, this case will be dismissed with prejudice. This case is set for status on Thursday, December 21, 2000 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | DEC 0 6 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 16 |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 DEC -6 AM 8: 02 | | |
| RJ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED DEC 0 6 2000

AURA LAMP & LIGHTING, INC., )
An Illinois Corporation, )
)
               Plaintiff, )   No. 00 C 2098
   v. )
)
INTERNATIONAL TRADING CORPORATION, )   Judg Joan B. Gottschall
d/b/a LUCENT LIGHTING, INC., )
)
              Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Aura Lamp & Lighting, Inc., a manufacturer and seller of lighting products, has sued its former supplier, International Trading Corporation ("ITC"), for allegedly breaching several agreements governing the parties' business relationship. The parties settled a previous suit filed by ITC against Aura relating to certain products to be delivered by ITC to Aura. ITC argues that the settlement's terms – embodied in a Release and Settlement Agreement ("the Agreement") – preclude Aura's current suit. Alternatively, ITC contends that the Agreement requires that this suit be transferred to a court in Michigan. Because the record in this case is insufficient to establish that Aura's claims are governed by the Agreement, the court denies ITC's motion to dismiss and its motion to transfer.

Aura has brought a six-count complaint against ITC under this court's diversity jurisdiction. The complaint is based on the breach of five different agreements, as well as ITC's alleged threat to commence patent litigation against Aura. Aura alleges that ITC has breached

the Amended Auralite Agreement (Count I), the Wonderlite Licensing Agreement (Count II), the Patent Agreement (Count III), the Sof-Touch Marketing Agreement (Count IV), and the Confidential Disclosure Agreement (Count V). Aura also seeks a declaratory judgment that a patent for a "flexible lighting system" issued to ITC President Richard Camarota is invalid (Count VI).

## Analysis

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not decide its merits. *Triad Associates Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). A complaint should not be dismissed unless it appears that the plaintiff cannot prove any facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). To withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

ITC's arguments in support of dismissal and transfer are based, to a great extent, on its contention that the current suit filed by Aura is governed by the Agreement. Judging by the terms of the Agreement, however, this is far from an obvious proposition. The Agreement's "Background" section provides that "[a] dispute has arisen between ITC and AURA regarding the sale and purchase of certain lighting products that ITC purchased and/or manufactured on behalf of AURA that are more specifically described on Exhibit 'A' attached hereto (the 'Products')." (Agreement at 1) Exhibit A is labeled ITC's "Inventory Summary" of "Products Purchased for Aura Lamp Lighting" dated December 23, 1998. It consists of a two-page chart

2

with columns setting forth the part numbers, part descriptions, number of units, and prices. The chart lists three categories of product: Wonderlites, Menards Softouch, and Aura Tube Lights. Given the specificity with which Exhibit A breaks down particular products by the number of units and prices, it is not apparent that the Agreement's use of the term "Products" is intended to encompass all products supplied by ITC to Aura. According to the Agreement, Exhibit A simply lists the products housed in ITC's warehouse as of December 23, 1998. (*Id.* ¶ 2) Whether the list set forth in Exhibit A comprises the entire universe of products making up the Aura-ITC relationship cannot be determined on the record before the court.

The bulk of the Agreement's provisions detail the method by which Aura will pay for and receive the inventory held by ITC. The Agreement contains dual releases: Aura releases ITC from any and all claims "arising from, or alleged to arise from, or relating to any matter related to the purchase of the Products from ITC" (*Id.* ¶ 10); ITC releases Aura from any and all claims "arising from, or alleged to arise from, the sale of the Products to AURA." (*Id.* ¶ 11) By the Agreement's explicit terms, the parties are released only from those claims relating to the sale of "the Products" – *i.e.*, the particular inventory held by ITC on December 23, 1998. There is no indication – express or implied – that the parties are released from future claims based on breaches of the previous agreements.

In that regard, ITC contends that the parties' previous agreements were rendered meaningless by the Agreement. ITC's primary support for this contention is the Agreement's provision that "[t]his Agreement and all exhibits attached hereto represent the entire understanding and agreement between the parties with respect to the subject matter hereof, [and]

3

supersede all prior agreements or negotiations between such parties." (*Id.* ¶ 15.4) Contrary to ITC's interpretation, this language does not even remotely suggest that all prior agreements are moot. Rather, the prior agreements are superseded only to the extent they overlap with the Agreement, and the Agreement constitutes the parties' "entire understanding and agreement" only "with respect to *the matter hereof.*" (*Id.*) (emphasis added) As evidenced by the rest of the Agreement's provisions, "the matter hereof" is the sale of the inventory held by ITC on December 23, 1998.

ITC's only other support for its interpretation is similarly unavailing. The Agreement's non-competition provision states that "the Patent Agreement between AURA, ITC, Terrance Palmer and Richard Camarota is not affected by this Agreement." (*Id.* ¶ 7) According to ITC's inferential leap, if the Patent Agreement is not affected, all other previous agreements must be affected. The non-competition provision prohibited ITC from selling or marketing "the rope lighting" to several identified companies for a certain period of time. Given that the Patent Agreement grants joint marketing rights to ITC and Aura for a halogen lamp, the parties may have wanted to clarify that those joint marketing rights were unaffected by the non-competition provision. In any event, regardless of the intent underlying the Patent Agreement's express exclusion from the Agreement, it hardly signifies an intention by the parties to render all other agreements null and void.

As the basis for ITC's request to transfer this case, it points to the provision that "[a]ny and all actions concerning any dispute arising hereunder shall be filed and maintained only in a state or federal court sitting in the State of Michigan and the parties hereto consent and submit to

4

the jurisdiction of such state or federal court." (*Id.* ¶ 15.5) This is not a blanket venue provision for any dispute between ITC and Aura; rather, it stipulates venue for any dispute arising under the Agreement. As discussed above, the Agreement relates only to the inventory held by ITC on December 23, 1998. Because there is nothing to suggest that Aura's current complaint pertains to that inventory, there is no basis on which this court could apply the venue provision. Accordingly, ITC's motion to transfer is denied.

As an alternative to its transfer request, ITC seeks dismissal of the counts based on agreements other than the Patent Agreement on the ground that those agreements were "extinguished by the Release and Settlement Agreement." (Mtn. at 15) As the court noted above, there is nothing in the Agreement to suggest that such is the case. The Agreement only supersedes previous agreements as they relate to the matters covered in the Agreement. The court cannot determine that Aura's current claims are addressed by the Agreement. ITC also argues that Aura "is now attempting to bring suit on claims relating to 'the purchase of the Products,' as defined in the Agreement." (*Id.*) If ITC comes forward with evidence that the particular products on which Aura's claims are based were listed in Exhibit A to the Agreement, summary judgment may be appropriate. However, on the current record before the court, there is no evidence to that effect.

ITC challenges three of Aura's claims on grounds other than the Agreement's allegedly preclusive effect. First, while acknowledging that the Agreement does not supersede the Patent Agreement, ITC nevertheless argues that Aura has failed to allege a breach of the Patent Agreement because the complaint does not allege that the sales at issue exceed the 80% threshold

5

provided for in that agreement. Under our system of notice pleading, "[i]t is sufficient if the complaint adequately notifies the defendants of the nature of the cause of action." *Duda v. Board of Educ.*, 133 F.3d 1054, 1057 (7th Cir. 1998). The complaint must be sustained "if any facts that might be established within [the] allegations would permit a judgment for the plaintiff." *Id.* Even without an explicit reference to the 80% threshold, the court finds that the complaint adequately notifies ITC of the claim. Further, satisfaction of the 80% threshold may be established within the allegations even though it is not specifically alleged. Aura has adequately pled a claim for breach of the Patent Agreement.

Second, ITC argues that Aura's claim for a declaration of patent invalidity is premature in that the complaint fails to allege facts supporting a reasonable apprehension in Aura of being sued for infringement. Aura's complaint alleges that sometime in 1999, ITC employees or agents contacted at least one Aura customer and stated that Aura's product infringed Camarota's patent, and that ITC intended to sue that customer for infringement. ITC contends that this allegation lacks the requisite specificity, and that the threat is now stale because ITC has taken no action since the alleged threat. For an "actual controversy" to exist in this type of case:

> [T]here must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993)).

As framed by the Seventh Circuit, "[t]he defendant must have engaged in conduct giving

6

rise to a reasonable apprehension on plaintiff's part that it will face . . . suit or the threat of one if it commences or continues the activity in question." *Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (quoting *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980)). The determination should be based on the facts existing at the time the complaint is filed. *Id.*

The court concludes that Aura's allegations are sufficient to place ITC on notice of the claim. Under our system of notice pleading, nothing more is required. Further, the court does not believe that a threat of litigation delivered in 1999 becomes stale, as a matter of law, by April 2000, when this suit was initiated by Aura. If the factual record developed through discovery reveals that Aura's purported controversy is a mere ruse or truly was rendered moot by the time suit was filed, ITC should pursue this line of argument on summary judgment.

Finally, ITC argues that Aura has failed to state a claim for breach of the Confidentiality Agreement under Michigan law because Aura alleges that such an agreement arose either expressly or by implication from the parties' prior dealings. According to ITC, Michigan law does not imply confidential disclosure agreements between business parties without an explicit agreement regarding confidentiality. Aura responds that ITC's argument "rests on its assumption that the claims in the instant action are governed by the Agreement." (Resp. at 7) Aura points out that Illinois law protects trade secrets without requiring a written agreement. (*Id.*)

ITC offers two reasons why Michigan law should apply. First, ITC looks to the Agreement's provision that "[t]his Agreement shall be governed, construed and enforced in accordance with the laws of the State of Michigan." (Agreement ¶ 15.5) Again, whether this

7

provision governs this dispute has yet to be determined. There is no indication in the record that Aura's claims are based on the products listed in Exhibit A.

ITC's second reason, offered in a footnote, is based on its insistence that Michigan law would apply under Illinois' choice of law rules. Factors to be considered include the place of contracting, the place of the contract's negotiation, the place of performance, the location of the contract's subject matter, and the domicile of the parties. *Curran v. Kwon*, 153 F.3d 481, 488 (7th Cir. 1998). ITC claims – without any accompanying evidentiary support – that the alleged breaches relate to activities in Michigan, that ITC received all of the merchandise in Michigan, and that negotiations for the Agreement occurred in Michigan. Even assuming that these representations are accurate, they still do not provide a sufficient basis on which this court can conduct a choice of law analysis. The court is not convinced that the Agreement is the contract most relevant to this suit, and the court does not know where the other contracts were negotiated or executed. Further, it appears likely that much of the contracts' performance occurred in Illinois, as that is where Aura is located.

The court does not mean to suggest that Illinois law should apply to this case, only that the current record is too sparse to allow the court to make such a determination. Because it is not clear that Michigan law applies, the court rejects – at least at this stage of the litigation – ITC's argument that Aura has failed to state a claim under Michigan law for breach of the confidentiality agreement.

## Conclusion

For the above reasons, ITC's motion to dismiss or transfer this case is denied. The court

notes that Aura apparently disregarded the court's order dated April 21, 2000, instructing Aura to file an amended complaint on or before May 19, 2000 in order to allege diversity adequately. If an amended complaint is not filed within fourteen days of the date of this ruling, this case will be dismissed with prejudice. This case is set for status on Thursday, December 21, 2000, at 9:30 A.M.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: December 5, 2000