Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2098 | **DATE** | February 11, 2002 |
| **CASE TITLE** | Aura Lamp & Lighting, Inc. vs. International Trading Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion [33-1] to vacate the July 11, 2001 dismissal is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | FEB 12 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 38 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RT | courtroom deputy's initials | 02 FEB 12 AM 7:27 U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AURA LAMP & LIGHTING, INC., ) | | |
| An Illinois Corporation, ) | | |
| ) | | |
| Plaintiff, ) | No. 00 C 2098 | |
| v. ) | | |
| ) | | |
| INTERNATIONAL TRADING CORPORATION, ) | Judg Joan B. Gottschall | |
| d/b/a LUCENT LIGHTING, INC., ) | | |
| ) | | |
| Defendant. ) | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Aura Lamp & Lighting, Inc. ("Aura") filed this diversity action against defendants International Trading Corporation d/b/a Lucent Lighting, Inc., and Richard J. Camarota. The amended complaint sought damages for breaches of contract and a declaration of patent invalidity. Fourteen months later, the defendants moved to dismiss the complaint for repeated violations of court orders and failure to prosecute. The court granted this motion at a hearing and entered final judgment on July 11, 2001. Before the court is Aura's motion to vacate this judgment under Fed. R. Civ. P. 59(e). For the reasons stated below, the court denies the motion.

"A motion . . . to set aside the judgment pursuant to Fed. R. Civ. P. 59(e) may only be granted if movant shows there was a mistake of law or fact or presents newly-discovered evidence that could not have been discovered previously." *Deutsch v. Burlington N. R.R. Co.*, 976 F.2d 735, 1992 U.S. App. LEXIS 24312, at *8 (7th Cir. 1992) (issued as a fully citable published opinion Dec. 7, 1992). Here, Aura presents no newly-discovered evidence, so the only

question is whether Aura shows that the dismissal order turned on a mistake of law or fact. Aura shows neither.

As Aura correctly observes, dismissal is a harsh remedy that is reserved for extreme cases. *See Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993).

> If the failure is inadvertent, isolated, no worse than careless, and not a cause of serious inconvenience either to the adverse party or to the judge or to any third parties, dismissal (if the failure is by the plaintiff) or default (if by the defendant) would be an excessively severe sanction. But as soon as a pattern of noncompliance with the court's discovery orders emerges, the judge is entitled to act with swift decision.

*Newman v. Metro. Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir. 1992). Here, Aura's pattern of noncompliance with the court's orders could hardly be more pronounced. In fact, one is hard pressed to find a single order with which Aura complied in a timely fashion. Practically every deadline imposed by this court on Aura came and went without so much as a request for additional time.

The case was filed on April 6, 2000. In a minute order of April 21, the court pointed out a jurisdictional pleading deficiency and allowed Aura until May 19 to amend its complaint. The court also made it clear that Aura needed to pay the $150 fee to the clerk of court before filing an amended complaint.[1] Aura did neither by the May 19 deadline; it paid the filing fee in June and did not file an amended complaint until December (after yet another reminder from the court). In the meantime, the defendants moved to dismiss the case for improper venue and failure to state a claim, and, alternatively, for transfer. The court ordered Aura to file a response to this motion by

---

[1] The omission of the fee was not an isolated filing defect—throughout the case, Aura repeatedly filed unsigned materials with the court.

2

July 5, 2000. Again, the deadline came and went with nothing; Aura filed the response three weeks late, on the 27th, after the defendants had already filed their reply brief. The defendants moved to strike Aura's late response. Finally sensing a problem, Aura filed a post hoc motion for enlargement of time in which to file its response. The court rejected the defendants' motion to strike and allowed Aura's untimely response.

On December 5, 2000, the court entered an order denying the defendants' motion to dismiss or transfer. The court noted that Aura had disregarded the April 21 order instructing Aura to file an amended complaint and warned that "[i]f an amended complaint is not filed within fourteen days of the date of this ruling, this case will be dismissed with prejudice." (Minute Order Dec. 5, 2000.) Aura missed that deadline too, but this time by only one day. On December 21, after the defendants had granted Aura several discovery extensions, the court ordered that written discovery would close on March 21, 2001. When Aura failed to comply, the defendants moved to compel discovery, to deem requests for admissions admitted, and for sanctions. In a March 22 hearing, over the defendants' objections, the court allowed Aura's counsel to select a new discovery deadline. Aura picked April 30. The court then ordered Aura to respond to all outstanding discovery requests by its chosen date and expressly warned that an untimely response would result in dismissal. The court also ordered Aura to file another amended complaint on or before April 16. Again, Aura did neither.

On June 12, 2001, the defendants moved to dismiss for repeated violations of court orders and failure to prosecute. Despite the court's order that by June 25 Aura was to file motions to enlarge time for discovery and to respond to the dismissal motion, Aura filed its motions to enlarge on July 9 and its response on July 10. In a July 11 hearing, the court granted the

defendants' motion to dismiss. Aura timely filed its motion to vacate the dismissal, but then neglected to file a reply.

None of Aura's arguments for vacating the dismissal order are convincing. While it is certainly true that dismissal is particularly disfavored with relatively young cases, *Webber v. Eye Corp.*, 721 F.2d 1067, 1070 (7th Cir. 1983), the Seventh Circuit has expressly declined to impose a minimum age requirement. *See Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993) ("There is no 'grace period' before dismissal for failure to prosecute is permissible . . . ."). Moreover, Aura errs in dating the case. Aura asserts that the case had been pending only seven months before dismissal. In fact, the case was over 14 months old. According to government statistics, during the twelve-month period ending September 30, 2000, the median time from filing to disposition of civil cases in the Northern District of Illinois was 5.1 months. *See* U.S. District Court - Judicial Caseload Profile, http://www.uscourts.gov/cgi-bin/cmsd2000.pl (last visited Feb. 3, 2002). While 14 months is far from ancient, it is older than average.

Quoting *Ball*, 2 F.3d at 759, Aura suggests that the court committed an error of law by failing to consider "the likely merits of the suit in deciding whether to dismiss it for failure to prosecute." As a preliminary matter, this court is not convinced that it must in every case expressly consider the merits before dismissing for attorney or party misbehavior. When the Seventh Circuit intends to impose a mandatory constraint on lower courts' exercise of discretion, it generally does so expressly. *Compare Ball*, 2 F.3d at 760 ("[T]he decision whether to dismiss a suit for failure to prosecute *should, ideally*, take full and careful account of[, inter alia,] . . . the probable merits of the suit . . . .") (emphasis added), *with id.* ("[T]here *must* be an explicit warning before the case is dismissed.") (emphasis added). Of course, an especially strong

4

likelihood of success on the merits may be sufficient to overcome relatively minor misconduct. Or, as the *Ball* court explained, the apparent weakness of a case may give rise to an inference that dilatory conduct is designed to force an unfair settlement or indicate that dismissal will not impair the objectives of the law under which the plaintiff is proceeding.[2] *Id.* at 759. But this court believes that at some point attorney or party misconduct may rise to such a level that the probable merits become essentially irrelevant. Indeed, *Ball* itself affirmed a lower court's dismissal despite "the lack of indication that [the plaintiff's] suit lacks substantial merit." *Id.* at 760. And whether or not a district court must *consider* the probable merits, it simply cannot be the case that a district court must *decide* that a claim lacks merit before dismissing it for failure to prosecute—else, the court's power to dismiss as a sanction for misconduct is wholly illusory.

But these ruminations do not matter in the case at bar. Even if this court erred by not expressly considering the merits, any such error was harmless. Aura has produced nothing beyond the complaint to substantiate the merits of its claims. Aura places far too much weight on the court's December 5, 2000 order denying the defendants' first motion to dismiss. Aura contends that this court rejected "defendants' claim that the claims asserted were without merit." (Mem. Supp. Mot. Vacate at 5.) But the opinion clearly states that "[t]he purpose of a motion to dismiss is to test the sufficiency of the complaint, not decide its merits." *Aura v. ITC*, No. 00 C 2098, 2000 U.S. Dist. LEXIS 17930, at *2 (N.D. Ill. Dec. 5, 2000). To be sure, surviving a motion to dismiss says something, but not enough to tip the scales against dismissal under the

---

[2]It is worth noting that the social objectives of contract law, unlike tort law, do not include deterrence. *Cf. Ball*, 2 F.3d at 757 (one objective of tort law is deterrence). Thus, even assuming that Aura's contract claims have merit, allowing the defendants to escape liability does not thwart this public interest. Moreover, Aura's private compensatory interest can be vindicated, albeit imperfectly, in a legal malpractice action against its lawyer. *See id.* at 757.

5

extreme circumstances of this case.

As the recitation above demonstrates, Aura's argument that it complied with this court's orders is simply false. Whether or not its responses to interrogatories were sufficient, Aura did not produce any responsive documents by its self-selected discovery deadline of April 30, 2001. Aura offers two explanations for missing this deadline—a disappearing secretary and a crashing computer—but neither would have prevented Aura from requesting an extension. Nor do these explanations apply to Aura's disregard of the court's orders both before and after April 2001. *See Ball*, 2 F.3d at 754 (affirming dismissal where the plaintiff's "excuse was applicable to only a small portion of the total course of conduct that persuaded [the judge] that the case was going nowhere").

Equally unavailing is Aura's argument that this court erred in dismissing the case because there was no showing of willfulness, bad faith, or fault on Aura's part. It is true that many Seventh Circuit decisions state that dismissal pursuant to Fed. R. Civ. P. 37 requires such a showing, but other decisions by the same court do not. *See Golant v. Levy (In re Golant)*, 239 F.3d 931, 936 n.1 (7th Cir. 2001) (citing cases). In any event, this court's dismissal was not based on a single failure to comply with a discovery order, but rather on a pattern of noncompliance and failure to prosecute under Rule 41. *See Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1179 & n.4 (7th Cir. 1987) (holding that the plaintiffs' pattern of noncompliance established a "clear record of delay" sufficient to justify dismissal pursuant to Rule 41(b)). Seventh Circuit precedent is quite clear that Rule 41 does not require a showing of willfulness, bad faith, or fault. *See id.* at 1179 ("[U]nlike a Rule 41(b) dismissal, a Rule 37(b) dismissal requires both a failure to comply with a discovery order and a showing of willfulness,

6

bad faith or fault."); *accord Ladien v. Astrachan*, 128 F.3d 1051, 1056 n.5 (7th Cir. 1997).

Aura also argues that the court should have imposed a lesser sanction or simply allowed Aura's counsel to withdraw. In light of Aura's continued failure to comply with court orders even after repeated warnings that noncompliance would result in dismissal, this court was convinced that no lesser sanction would have been effective. *See id.* at 758 ("A court is not necessarily required to take less severe action before imposing the sanction of dismissal, but dismissal should be employed only if the district court has determined that it could not fashion an equally effective but less drastic remedy.") (citation and internal quotation marks omitted). The court provided Aura with ample opportunity to mend its ways. Dismissal here was not a disproportionate sanction. As for withdrawal, Aura's counsel first volunteered to resign at the July 11, 2001 hearing, after the court had announced that it was ready to rule on the motion and it was clear that dismissal was imminent. This was much too late. Allowing a lawyer to avoid the consequences of his misconduct by such an eleventh-hour gambit would undermine the court's ability to control the progress of cases before it.

In asking for the opportunity to substitute counsel, Aura appears to be relying on the notion that it should not be penalized for the sins of its lawyer. This sentiment has some appeal, but the Supreme Court has expressly rejected it:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be

7

charged upon the attorney.

*Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) (internal quotation marks omitted). Moreover, Aura's interests are not the only ones at stake. The defendants, the court, and litigants in other cases before this court were all prejudiced by the misdeeds of Aura's chosen agent. *See Ball*, 2 F.3d at 759 (noting costs of dilatory behavior to defendant, court, and other litigants).

Aura's motion to vacate the order dismissing this case is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: February 6, 2002